Green, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover compensation for the manufacture by or for the United States on the use by it of certain devices relating to shock absorbing wheels for *208 aeroplanes which are claimed to infringe Letters Patent to the plaintiff, #1,432,771.
In defense to the action, the defendant sets up that there has been no infringement, that the patent issued to plaintiff is invalid for want of invention, and also makes a special plea in bar that the plaintiff for valuable consideration has granted the United States an irrevocable but non-exclusive right and license to make, have made, use and sell, for Governmental purposes only, any and all of the devices covered by the patent upon which the suit is based.
The case isi not as complicated as most patent cases and all essential features of the evidence are set out in detail in the findings of fact. On the first of these defenses the case turns upon the ultimate conclusion to be reached from these facts as to whether the patent was valid or invalid in view of the prior art.
As everyone knows, an aeroplane, in order to take off or land upon the ground, is provided with a mechanism comprising a framework adjacent to the lower part of the fuselage to which framework there is usually attached on the underside thereof a pair of wheels. The speed with which an aeroplane lands makes it necessary, or at least advisable, that these wheels should yield to a greater or less extent to the shock sustained in striking the ground or in the irregularities of the ground surface as it progresses and then resume their former position. The device présented in plaintiff’s patent accomplished this purpose by the use of a specially designed wheel.
The wheel described in the Martin patent, as shown by Fig. 1 of the findings and the detailed description contained in Finding 5, does not rotate upon the axle but has, as its periphery, a rotatable part with a suitable tire which is carried by a non-rotatable part provided with a vertical guide slot. The axle structure which is also non-rotatable is mounted in its guide slot which permits a vertical relative movement between the two non-rotatable parts. This vertical movement is resisted by bands of elastic material which will normally hold the axle in the upper part of the vertical slot but yield downward in its guiding slot relative to the wheel when striking some obstruction after which the elas *209 tic bands will tend to restore it to its original place. In other words, the combination permits (relative to each other) the axle to move downward and the wheel to move upward under heavy loads or shocks.
The design of the plaintiff is comparatively simple. The diagram of Fig. 1 of the findings shows in the center the axle marked 1 and the slot in which it moves. The axle is shown suspended on elastic bands marked 25 which pass on the underside thereof and up over a rounded part upon the inner periphery of the wheel. The outer periphery of the wheel is permitted to turn freely upon roller bearings mounted on the non-rotatable part of the wheel. These bearings are marked in the figure 17, 18, and 19. This design, as stated above, permits the axle and the inner part of the wheel as a whole to have a relatively vertical movement.
The defendant contends that all of plaintiff’s design was anticipated by the prior art and showed no invention. A skilled patent commissioner of this court so found upon the presentation of the evidence. The plaintiff insists that this finding is erroneous but upon a careful examination of the evidence and the case presented, we think the commissioner was clearly right.
The claims, in suit are set out in Finding 6 and we do not think it is necessary to repeat them.[1] Long prior to the Martin patent, builders of aeroplanes had equipped them with devices in various forms intended to accomplish the same purpose as the plaintiff’s patent and in the various mechanisms used had shown the equivalent of the essential features of the patent of plaintiff. The contention of the plaintiff, however, is in substance that none of these devices exhibited precisely the same combination as shown in his patent, that this combination was therefore new, and that as it was a useful combination it showed invention and made his patent valid. The feature of plaintiff’s patent which he argues supports this claim is the location of the elastic bands which are used to enable the wheel to take up or absorb any shocks which may be encountered. Every *210 thing else in the patent pertinent to this issue is unquestionably shown by prior devices.
The findings set out in detail a number of patents which disclosed a wheel, the outer part of which was rotatable and the inner part • non-rotatable having an axle structure also non-rotatable but capable of relative vertical movement. The use of elastic bands as the shock absorbing element in aeroplane wheels was disclosed in the prior patent of Loening set out in Finding 14 which used a wheel of the type described above. The shock absorbing device of plaintiff’s patent was located wholly within the planes of the side faces of the wheels, thereby reducing air resistance when the plane was in motion. Other inventors had previously so located the shock absorbers but had used some type of springs instead of elastic bands, and the elastic bands used in the Loening patent were not located within the plane of the wheel. It is therefore argued that in so locating the shock absorbers and using elastic bands as the shock absorbing element, the plaintiff created a new and valuable combination which constituted invention and entitled him to a patent.
A prior art construction is exemplified by the shock absorber used on aeroplanes designated as the Curtiss CK1 and CR2. This construction is diagrammed in Fig. 4 of the findings. It shows the use of an elastic cord in the shock absorbing mechanism wrapped about two non-rotatable members guided upon each other by means of a slot for substantially vertical movement, and composed respectively of the axle shaft and the chassis members adjacent to the wheel.
A wheel known as the Ackerman aeroplane wheel was in public use on aeroplanes in 1916 and formed the basis of a patent issued in that year to Strietelmeier. This wheel also had a rotatable rim carrying a tire and the rim was connected to a rotating hub-member by means of a plurality of loop-like steel spring spokes which furnished the means of absorbing the shocks as more particularly described in Finding 17. These shock absorbing spokes were located within the planes of the sides of the wheel. The advantage of such a construction in minimizing wind resistance was *211 known to those skilled in the art prior to the date of the patent in suit and had been specifically referred to and discussed hi a publication entitled, the “Aerial Age Weekly” in the issue of August 20, 1917, as further shown in Finding 17.
Patents disclosing prior art wheels of the same general type as the wheel in the patent in suit are shown in Finding 13 to have been issued to, four different parties. These patents also disclose a wheel structure comprising a rotatable part and two non-rotatable parts guided upon each other for relative vertical movement by means of a vertical guide slot (or its structural equivalent) and resilient or elastic means comprising metal springs for resisting said movement, with all of the elements substantially located between the planes of the side faces of the wheel. A diagram of the Leffort patent, Fig. 3 of the findings, is illustrative of this prior art structure and it will be seen that the claims of the patent in suit differ from the disclosure contained in these patents only in the designated use of “wrapped elastic material” or “elastic bands” wrapped around the rounded parts as the shock absorbing element instead of the spiral elastic springs.
The relative advantages and disadvantages of elastic cords of rubber as compared with metallic springs for shock absorbers on aeroplanes were well known prior to the filing of the application which matured into the patent in suit and are fully set forth in an article by J. C. Hunsaker contained on pages 78 to 82, inclusive, of the publication entitled “Aviation,” in the issue of September 1, 1916. With this information at hand, it is obvious that the utilization •of either rubber cords or metallic springs with their associated mountings was within the choice of those skilled in the art, and that to substitute an elastic material or elastic hands wrapped around rounded parts for the elastic or resilient metal springs in the prior art wheels of the type referred to in Finding 13, or to relocate the rubber shock absorber of the Curtiss type CB.1 and CB.2 (Finding 15) within the plane of the wheel, would require only mechanical skill and would not contribute any new or unexpected result to the art.
*212 We think it is plain that if the location within the plane of the wheel of a particular type of shock absorber already known in the art was of any practical and-substantial advantage (a matter as to which there seems to have been some dispute) it did not require any invention to devise a method for so placing it. Ordinary mechanical skill would seem quite sufficient. The use of elastic material or elastic bands wrapped around rounded parts, instead of elastic or resilient metal springs, was merely an adoption of prior art as shown by the patent to Loening (1915), and the publication entitled “Flight” (1912) showed a shock absorbing device, more particularly described in Finding 14, in its essential features similar to the plaintiff’s device. To change the location of the rubber shock absorber of the Curtiss type CK1 and CE2, as illustrated by Fig. 4 of the findings, from adjacent to the wheel to within the plane of the wheel would, as stated in the findings, require only mechanical skill and not invention.
It is said that there is no evidence to support this conclusion. It is a sufficient answer to say that both methods had been made known by patents and publications and both put to practical use and there is nothing to indicate any mechanical difficulty in making the change. It is also argued that the patent on the Ackerman wheel contains no suggestion of elastic bands or cords in the mechanism of the shock absorber and that prior patents making use of elastic bands do not contain any reference to the matter of placing the shock absorbing mechanism for aeroplanes within the plane of the wheels. But the patent on the Ackerman wheel gave rise to an article published in the Aerial Age Weekly (1911) calling attention to certain advantages of locating the shock absorbing mechanism within the plane of the wheels. With this purpose in'mind, the designers of aeroplane wheels had only to take the device employing elastic cords in the shock absorber as shown by prior patents and change its location to make it conform with the theory set forth in the article in the Aerial Age Weekly quoted in Finding 17. There is, as plaintiff contends, no direct testimony that this involved only mechanical skill. No witness testified to that effect but the evidence as a whole makes this conclusion so manifest that *213 direct testimony by an expert is not required in order to enable the court to reach the conclusion set out in the findings.
Summarizing the evidence, we find that a wheel with an ■outer rim and tire rotatable upon an inner part not rotatable was not new. It was not new to have a non-rotatable axle mounted in a guide slot so as to provide for a substantially vertical relative movement between the two non-rotatable parts. It was not new to have the vertical movement resisted by elastic bands wrapped around portions of the two non-rotatable parts in such a manner as to permit a yielding under heavy loads or shocks; nor was it new to use rubber for the elastic material in the bands. It was not new to have the shock absorbing element placed within the side planes of the wheel, and whatever advantage there was in so placing it was well known. While a shock absorber using elastic bands had not been so located, such an operation would naturally be suggested to those skilled in the art who wished to minimize the wind resistance of the wheel.
The case of Loom Co. v. Higgins, 105 U. S. 580, is cited in support of plaintiff’s contention that his combination was patentable and showed invention, but we think the language of the opinion shows that it is not applicable to the facts of the case before us. In that case the portion of the opinion quoted by counsel for plaintiff shows that the court considered that Webster (whose design was embodied in the patent in suit therein) was the first to see the value of the combination that formed the basis of his patent and the first to bring it into notice and urge its adoption. In the instant case, prior to the issuance of plaintiff’s patent, there were two kinds of shock absorbers which were well known: one used springs located within the plane of the wheel; and the other rubber bands on the same general plan as that ■described in plaintiff’s patent but located outside of the plane of the wheel. Whereupon, scientific journalists discussed the advantages of the location of the shock absorbers within the planes of the wheel without reference to the type used. It was, we think, quite apparent that this could be done with either type by those skilled in the art.
*214 Our conclusion is that claims 1 and 2 of the patent of plaintiff are invalid because of complete anticipation, and claims 3 and 4 are invalid for want of patentable novelty or invention over the prior practical, patented, and published art as found by the commissioner. This makes it unnecessary that we should determine whether the evidence sustains the other defense set up by defendant, namely, that the plaintiff for a valuable consideration had granted to the United States an irrevocable but non-exclusive right and license to make, have made, use and sell, for Governmental purposes only, any and all of the devices covered by the patent upon which the suit is based.
Judgment will be entered dismissing plaintiff’s petition; and for the cost of printing in favor of the defendant. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.

 It should be noted that Nos. 1 and 2 of the claims in suit do not contain the limiting phraseology directed to the location of the shock absorber elements within the tire faces or planes of the side faces of the wheel.